0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
LIFESCI CAPITAL LLC,

                Plaintiff,

    -against-

REVELATION BIOSCIENCES, INC.,

                Defendant.
----------------------------------------------------------------------X

Case No. 22-cv-1411

**COMPLAINT**

Plaintiff LifeSci Capital LLC (LifeSci), through its attorneys, Solomon & Cramer LLP, for its Complaint against defendant Revelation Biosciences, Inc. (Revelation) states:

## NATURE OF THE ACTION

1. This is an action to recover $5,319,812 in damages based on the failure to pay banking and advisory fees due from a successful merger transaction. The obligation to pay and the amount due are admitted in defendant's own SEC filings. The only conceivable reason for non-payment is that Revelation has tactically chosen not to pay, perhaps in the unrealistic hope that it will compel Plaintiff to take a lesser amount. But, in the end, Defendant will have to pay what it admittedly owes (plus interest and attorneys' fees) and this inauspicious gambit will result in nothing more than a self-inflicted financial and reputational wound.

## THE PARTIES

2. Plaintiff LifeSci is a limited liability company formed under the laws of the State of New York. Its members are citizens of the State of New York. LifeSci is a boutique investment banking firm focused on life science and healthcare companies.

3. Defendant Revelation is a Delaware corporation with its principal executive office at 4660 La Jolla Village Drive, Suite 100, San Diego, CA 92122. According to its website, "Revelation is a clinical stage company founded by industry veterans focused on developing

therapeutics and diagnostics for viral infections by harnessing the power of the innate immune system."

4. Revelation is the successor to Petra Acquisition, Inc. (Petra).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of New York. Defendant is a citizen of Delaware and California. The amount in controversy is in excess of $75,000, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391 because the parties designated this venue as the exclusive venue for any dispute, and the parties voluntarily submitted to the personal jurisdiction of this Court.

7. The Court has personal jurisdiction over Defendant because it agreed, pursuant to the contract at issue in this action, that any dispute broadly relating to that agreement would be resolved exclusively in a state or federal court located in New York, New York.

## FACTS

1. **The BCMA**

8. Petra was a blank check company, commonly referred to as a special purpose acquisition corporation or SPAC. It raised approximately $74 million through an initial public offering (or IPO) from investors for the sole purpose of acquiring or merging with one or more existing "target" companies. As a SPAC, Petra was required to hold those funds in a Trust Account to be utilized for the purpose of acquiring or merging with an existing operating company.

9. Under a letter agreement dated October 7, 2020, referred to as a "Business Combination Marketing Agreement" or BCMA (Exhibit A)[1], Petra engaged LifeSci and three other firms to assist it in finding and consummating a business combination with a target company.

10. Petra agreed to compensate these four advisors with a cash fee equal to "4% of the gross proceeds received by [Petra] in the IPO," with LifeSci being entitled to a 52.5% share of that fee. But the fee would not be paid unless and until Petra completed a subsequent business combination transaction.

11. The BCMA gave the parties the option to enforce its provisions in arbitration or in a state or federal court in New York, with the prevailing party entitled to recover its reasonable attorneys' fees and expenses.

12. On October 13, 2020, Petra consummated an IPO of 7,000,000 of its units (the "Units"). The Units were sold at a price of $10.00 each, generating gross proceeds to Petra of $70,000,000.

13. On October 13, 2020, simultaneously with the consummation of the IPO, Petra completed a private placement of 3,150,000 private warrants, generating gross additional proceeds to Petra in the amount of $3,150,000.

14. On October 14, 2020, the underwriters of the IPO exercised their over-allotment option, in part. The closing of the issuance and resulting sale of an additional 278,151 Units occurred on October 16, 2020, also at $10.00 per Unit. This generated further additional gross proceeds to Petra in the amount of $2,781,510.

---

[1] Also available at https://www.sec.gov/Archives/edgar/data/0001810560/000121390020031128/ea128173ex10-5_petraacq.htm

3

15.     As a result of the IPO and the related transactions described above, LifeSci and the three other advisors earned a deferred underwriting fee of $2,911,1260.40, which was to be paid upon consummation of a subsequent business combination transaction involving Petra. LifeSci's share of that fee was 52.5% or $1,528,411.71.

**2. The Agreement**

16.     Thereafter, LifeSci and Petra entered into a letter agreement dated November 3, 2020 (the Agreement, Exhibit B). Under the Agreement, LifeSci agreed to provide investment banking and financial advisory services to Petra. The purpose of the engagement was to help Petra – a special purpose acquisition corporation or "SPAC" – identify and consummate a "transaction" involving a merger with or acquisition of a "target" company.

17.     In addition to providing advisory services, Petra also appointed LifeSci to serve as its placement agent, meaning that LifeSci would privately place Petra's securities with investors to raise money in connection with the transaction.

18.     Petra agreed that LifeSci's position as financial advisor and placement agent would be exclusive and would last for at least one year, with options to extend for additional one-year terms.

19.     The Agreement set out the fees that Petra would pay LifeSci if a transaction consummated. LifeSci was to receive an "M&A Advisory Fee" equal to 3.5% of the "Total Consideration" transferred to the target company, with 1% paid in cash and 2.5% paid in equity from the post-transaction surviving company.

20.     In addition to the M&A Advisory Fee, Petra agreed to pay LifeSci an additional "Capital Markets Advisory Fee" based on a formula tied to the amount of cash that Petra retains from its investors' original IPO investments, held by Petra in a "Trust Account," through the closing of a successful transaction.

21. In addition to the M&A Advisory Fee and the Capital Markets Advisory Fee, Petra agreed to pay LifeSci a "Placement Agent Fee" of 7% of the gross cash proceeds received by the company from its private placement offering.

22. The Agreement also set a minimum fee for all three fees (namely, the M&A Advisory Fee, the Capital Markets Advisory Fee, and the Placement Agent Fee) of $2,500,000 upon consummation of a successful merger or acquisition.

23. Finally, for a period of 24 months following consummation of a successful transaction, Petra granted the LifeSci the right to participate in at least 25% of any securities offered by Petra and a right of first refusal to act as its underwriter or placement agent in connection with such an offering.

24. Petra also agreed to reimburse LifeSci's expenses incurred under the Agreement.

**3. The Revelation Merger Agreement**

25. Pursuant to an agreement dated August 29, 2021 (the Merger Agreement), Petra agreed to merge with Revelation Biosciences, Inc. (the Merger). Under the Merger Agreement's terms, the maximum fee payable to LifeSci was capped at $2,650,000 in cash and $2,650,000 in equity (the Cap).

**4. The Amendment to the Agreement**

26. By letter dated September 17, 2021, Petra and LifeSci amended the Agreement (the Amendment, Exhibit C).

27. Under the Amendment, LifeSci relinquished its right to serve as Petra's placement agent for the Merger.

28. The Amendment also changed the calculation of the M&A Advisory Fee, made its subject to the Cap, and eliminated the Capital Markets Advisory Fee and the Placement Agent fee.

### 5. Deferral of Fee Under BCMA

29. By letter agreement dated January 10, 2022 (the "Deferral Letter", Exhibit D), LifeSci and the three other advisors under the BCMA agreed with Petra to amend the BCMA and to alter LifeSci's entitlement to fees under the Agreement, as amended by the Amendment.

30. Under the Deferral Letter, Petra acknowledged its obligation to pay Underwriting Commissions to LifeSci in the amount of $1,528,411.71 and a cash M&A Fee of $1,050,000, for a total amount of cash due to LifeSci of $2,578,411.71.

31. Petra further agreed, on behalf of the combined company (now known as Revelation), that it would pay the cash components of the Underwriting Commissions and the M&A Fee upon "any debt or equity financing of the post-business combination company [i.e., Revelation]" out of any financing proceeds or in cash and stock at the end of six months.

32. If Petra (n/k/a Revelation) failed to make these cash payments on time, it agreed to pay interest on the balances at 1.5% percent per month.

### 6. Consummation of the Merger

33. On May 17, 2021, LifeSci introduced Revelation Biosciences, Inc. to Petra as a potential merger candidate.

34. On May 18, 2021, LifeSci prepared a letter of intent in contemplation of a merger between Petra and Revelation Biosciences, Inc. After further negotiations and diligence, the parties executed a final version of the LOI on July 10, 2021. Thereafter the parties negotiated the final terms of a merger agreement. LifeSci was intimately and integrally involved in this negotiation and diligence process.

35.     On August 29, 2021, Petra Acquisition, Inc. and Revelation Biosciences, Inc. executed an Agreement and Plan of Merger (the Merger Agreement). The Merger Agreement is publicly available on the SEC's website.[2]

36.     On August 30, 2021, Revelation Biosciences, Inc. and Petra issued a joint press release announcing that they had entered into a merger agreement. The merger transaction was structured as "reverse merger," meaning that Petra would create a subsidiary; Revelation Biosciences, Inc. would merge with that subsidiary, making the combined entity a wholly owned subsidiary of Petra; and then the publicly-traded Petra would change its name to "Revelation Biosciences, Inc." At the time of the announcement, Petra held $73 million in its Trust Account from its IPO. Those funds would be available to fund the merged entity's business.

37.     In the press release, Petra and Revelation acknowledged that LifeSci was Petra's "financial and capital markets advisor."

38.     In an attached "transaction overview," the merging parties explained that Petra would acquire Revelation Biosciences, Inc. for stock consideration valued at $105,000,000. After closing, the merged company would have access to approximately $70 million of "pro forma" cash plus up to an additional $84 million through the sale of cash warrants with a strike price of $11.50.

39.     Following the announcement of the Merger, on September 20, 2021, Petra filed a Registration Statement on Form S-4 with the SEC. There, Petra sought to register 10,500,000 shares of its Common Stock for sale in a public offering. In the Registration Statement, Petra acknowledged its obligation to pay LifeSci a fee under the BCMA (that is, the business

---

[2] https://www.sec.gov/Archives/edgar/data/0001810560/000121390021046426/ea146771ex2-1_petraacquisit.htm

combination and marketing agreement dated October 7, 2020, among Petra, LifeSci, and the three other advisory firms):

> The Company has engaged LifeSci Capital LLC as an advisor in connection with a Business Combination to assist the Company in holding meetings with its shareholders to discuss the potential Business Combination and the target business' attributes, introduce the Company to potential investors that are interested in purchasing the Company's securities in connection with a Business Combination, assist the Company in obtaining shareholder approval for the Business Combination and assist the Company with its press releases and public filings in connection with the Business Combination. <u>The Company will pay LifeSci Capital LLC a cash fee for such services upon the consummation of a Business Combination in an amount equal to 4.0% of the gross proceeds of Initial Public Offering</u>, exclusive of any applicable finders' fees which might become payable.[3]

40.     On September 23, 2021, Petra filed a Form 8-K[4] announcing the Amendment to the Agreement (that is, the LifeSci/Petra letter agreement dated November 3, 2020), which Petra described as LifeSci's "agree[ment] to provide certain investment banking and financial advisory services to the Company with respect to the Company's efforts to engage in an initial business combination transaction." Petra described the effect of the Amendment as follows:

> The Amendment provides for, among other things, (a) the deletion of the provisions in the Agreement regarding the appointment and engagement of LifeSci for certain placement agent services as well as any related Placement Agent Fee, (b) the deletion of the provisions in the Agreement entitling LifeSci to a Capital Markets Advisory Fee, and (c) a cap on maximum fees payable to LifeSci with respect to the transactions contemplated by that certain Agreement and Plan of Merger between the Company and Revelation Biosciences, Inc. ("Revelation"), dated August 29, 2021 (the "Business Combination"), in the amount of $2,650,000 in cash and $2,650,000 in shares of Company common stock.

---

[3] https://www.sec.gov/Archives/edgar/data/0001810560/000121390021048712/fs42021_petraacq.htm#T991007 at Note 7 (page F-16).
[4] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001810560/000121390021049595/ea147854-8k_petraacq.htm

41. Thus, by September 23, 2021, Petra had publicly acknowledged its liability to LifeSci under the various agreements described above:

   a. 4% of the Gross Proceeds from the IPO (to be split with other advisors);

   b. Cash up to $2,650,000;

   c. Stock in the post-merger company valued at up to $2,650,000.

42. In a third amendment to its Registration Statement on Form S-4, dated December 13, 2021, Petra disclosed that the pre-money valuation of Revelation for purposes of the Merger would be $105,000,000. In other words, the shareholders of Revelation Biosciences, Inc. would receive 10,500,000 shares in Petra's common stock at a per share value of $10 per share.

43. Based on this $105,000,000 valuation of the Target, LifeSci would be entitled to a cash fee under the Amendment to the Agreement of $1,050,000 (1%) and equity in the amount of $2,650,000 (2.5%).

44. In addition to that amount, LifeSci was entitled to its 52.5% of the Deferred Underwriting Fee (4% of the underwriting proceeds) from Petra's initial IPO, which raised $72,781,510, or $1,528,411.71 ($72,781,510 x 4% x 52.5%).

45. In its amended Registration Statement, Petra disclosed its total obligation to LifeSci, disclosing to investors that "the fees that would be payable to LifeSci Capital upon the consummation of the Business Combination amount to approximately $5,203,411."[5]

46. As reported on its Form 8-K filed with the SEC, Petra consummated the merger transaction with Revelation Biosciences, Inc. on January 10, 2022.

47. But Revelation was not finished raising money. On January 27, 2022, Revelation reported on a Form 8-K that on January 23, 2022, it had raised an additional $7.76 million

---

[5] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001810560/000121390021064987/fs42021a3_petraacq.htm at p. 8, 28, 81, 90, 122.

pursuant to a Securities Purchase Agreement with an institutional investor. The closing under the Securities Purchase Agreement consummated on January 25, 2022.

48. This subsequent capital raise was significant because it triggered Revelation's obligation under the Deferral Letter to use these proceeds to pay the cash components of the Deferred Underwriting Commission and the Cash M&A Fee ($1,528,411.71 and $1,050,000, respectively).

49. Despite its clear and undisputed obligation under the various agreement discussed above, Revelation refused to pay LifeSci the compensation due to it, including cash of $2,578,411.71 and stock valued at $2,650,000.

50. The subsequent capital raise of $7.76 million was also significant because it violated Revelation's promise under the Agreement to permit LifeSci to participate in any such financing transaction as a placement agent or underwriter for up to 25% of the financing amount. Revelation used another placement agent, Roth Capital Partners, LLC (Roth), thus depriving LifeSci of an additional fee of at least $116,400.

51. On February 7, 2022, LifeSci issued a demand letter to Revelation, seeking the cash and equity compensation due to it based on the transactions and agreements described above.

52. Revelation did not comply with the demand, but asked that LifeSci retract the demand as a condition to further discussions for resolving the demand.

53. Hoping to reach an amicable resolution, LifeSci retracted the demand without prejudice. But its act of good faith was not reciprocated and the additional discussions were unproductive.

54. On February 17, 2022, LifeSci reinstated its February 7, 2022 demand. Despite this, Revelation failed to abide by its admitted contractual obligations to LifeSci.

### AS AND FOR A FIRST CAUSE OF ACTION
### Breach of the BCMA

55. Plaintiff repeats the above allegations.

56. The BCMA is a valid and enforceable contract.

57. Under the BCMA, Revelation was obligated to pay LifeSci 52.5 percent of 4% of the IPO proceeds of $72,781,510 upon consummation of the Merger.

58. Revelation breached its obligation to pay LifeSci its share of the compensation due under the BCMA.

59. LifeSci performed all of its duties under the BCMA.

60. LifeSci has been damaged as a result of the breach in an amount equal to $1,528,411.71.

61. LifeSci is also entitled to recover its attorneys' fees and litigation expenses.

### AS AND FOR A SECOND CAUSE OF ACTION
### Breach of the Agreement as Amended

62. Plaintiff repeats the above allegations.

63. The Agreement as amended by the Amendment is a valid contract.

64. Under the Agreement as amended by the Amendment, Revelation is obligated to pay to LifeSci the M&A Cash Fee of $1,050,000 (equal to 1% of the valuation of the Target in the Merger) and to issue equity to LifeSci valued at $2,625,000 (equal to 2.5% of the valuation of the Target in the Merger).

65. Revelation breached its obligation to pay LifeSci the cash and equity due under the Agreement and the Amendment upon consummation of the Merger.

66. LifeSci performed its duties under the Agreement as amended by the Amendment.

11

67. LifeSci has been damaged as a result of Revelation's breach in the amount of $3,675,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of Agreement re. Placement Fee

68. Plaintiff repeats the above allegations.

69. Under the Agreement section 6(g), Revelation agreed that "upon the successful consummation of a Transaction, as contemplated by this Agreement, the Company shall grant LifeSci a twenty-four (24) month right of participation, with a minimum participation level of twenty-five percent (25.0%) of all securities offered, with commensurate underwriting or placement agent fees, to act as an agent or underwriter on any future private placement or public offering of the Company's securities in which the Company elects to engage a placement agent, underwriter or other manager of the Company's securities." In order to effectuate this right, Revelation further agreed to provide LifeSci with 20 days' notice of any planned transaction, so that LifeSci could decide whether to exercise its rights.

70. The merger between Petra and Revelation constituted a "successful consummation of a Transaction," thus satisfying the condition precedent for the provisions of section 6(g) of the Agreement.

71. On January 25, 2022, Revelation consummated a $7.76 million financing transaction without providing LifeSci notice or the opportunity to participate in 25% of the offering as a placement agent. Instead, Revelation designated Roth as its exclusive placement agent.

72. Revelation's failure to provide LifeSci with notice and a chance to participate in this financing constituted a breach of the Agreement.

73. Had LifeSci been permitted to participate to the 25% level, it would have earned a fee of at least $116,400, which constitutes 25% of the fee paid to Roth.

74. As a result of Revelations' breach, LifeSci suffered damages in the amount of at least $116,400.

WHEREFORE LifeSci demands judgment against Revelation as follows:

- On the first cause of action, damages in the amount of $1,528,411.71, plus prejudgment interest at 1.5% per month, plus attorneys' fees and expenses incurred in this action;

- On the second cause of action, damages in the amount of $3,675,000, plus prejudgment interest at 1.5% per month;

- On the third cause of action, damages in the amount of $116,400 plus prejudgment interest at 9% per annum;

- On all three causes of action, prejudgment interest at the rate of 1.5% per month, as provided in the January 10, 2022 letter agreement;

- And costs, disbursements, and such other and further relief as is just and proper.

Dated: New York, New York
       February 18, 2022

SOLOMON & CRAMER LLP
*Attorneys for LifeSci Capital LLC*

By:   /s/Andrew T. Solomon
      Andrew T. Solomon
      asolomon@solomoncramer.com

25 West 39th Street, 7th Floor
New York, NY 10018
(212) 884-9102