UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIFESCI CAPITAL LLC,

                 Plaintiff,

-against-

REVELATION BIOSCIENCES, INC.,

                 Defendant.

22-CV-1411 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

      Defendant Revelation Biosciences failed to pay Plaintiff LifeSci Capital for the work LifeSci performed advising Revelation through a merger transaction. LifeSci now seeks the fees it is owed. In an attempt to avoid paying these fees, Revelation claims that LifeSci acted as a faithless servant and intentionally misled Revelation to agree to the merger. The Court referred this matter to Magistrate Judge Stewart D. Aaron, who, in a thoughtful Report and Recommendation, rejected Revelation's arguments and found that Revelation does in fact owe LifeSci its promised fees. For the reasons stated herein, the Court ADOPTS Judge Aaron's Report and Recommendation in its entirety.

## BACKGROUND

      The Court adopts the recitation of facts set forth by Judge Aaron in the Report and Recommendation and assumes the parties' familiarity. ECF No. 85 ("R&R"). The Court will repeat only those facts relevant to the consideration of Plaintiff's objections.

      Plaintiff LifeSci Capital LLC ("LifeSci") brings this action seeking to recover damages from Defendant Revelation Biosciences, Inc. ("Revelation") for failure to pay banking and advisory fees owed following the closing of a merger transaction. ECF No. 1. ("Compl.") at ¶ 1. On September 14, 2023, Defendant filed a motion for leave to file a Second Amended Answer.

ECF No. 53. Plaintiff opposed Defendant's motion on September 27, 2023, and Defendant replied on October 4, 2023. ECF Nos. 56, 58. On October 13, 2023, Plaintiff filed a motion for summary judgment, which Defendant opposed on November 22, 2023. ECF Nos. 65, 81. Plaintiff filed its reply on November 29, 2023. ECF No. 84.

On December 1, 2023, Magistrate Judge Stewart D. Aaron issued an R&R on these motions. In it, Judge Aaron recommended that the Court grant Plaintiff's motion for summary judgement and deny Defendant's motion for leave to file a Second Amended Answer.

## LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Within fourteen days after the magistrate judge has issued their report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

A district court reviews *de novo* the portions of the report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). For portions of the report and recommendation "to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (internal citation and quotation marks omitted). "To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error." *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 450 (S.D.N.Y. 2022).

In reviewing a magistrate judge's decision on nondispositive matters, including a denial of leave to amend, a district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Xie v. JPMorgan Chase Short-Term Disability Plan, et al.*, No. 15-CV-4546 (LGS), 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018) ("[C]ourts in this district appear to have consistently applied the 'clearly erroneous' standard to evaluate the denial of leave to amend by a magistrate judge, regardless of whether the denial foreclosed potential claims."); *see also Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, No. 16-CV-10047 (ALC) (SLC), 2023 WL 2706989, at *3 (S.D.N.Y. Mar. 30, 2023) (reviewing report and recommendation's denial of leave to file a second amended complaint and reopen discovery for clear error). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *Xie*, 2018 WL 501605, at *1 (quoting *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007)).

## DISCUSSION

Defendant's primary objection to the R&R is that Judge Aaron incorrectly rejected Defendant's faithless servant defense. *See* ECF No. 87 ("Def. Br.") at 12–21. The Court treats this objection as sufficiently precise to merit *de novo* review, but nonetheless confirms the R&R's conclusions.

### I. Revelation's Faithless Servant Defense Fails

In response to Plaintiff's claim for breach of contract, Revelation asserts that Plaintiff was a faithless servant and thus barred from enforcing the parties' agreement. "Under the faithless servant doctrine, one who owes a duty of fidelity to a principal and who is faithless in the performance of her services is generally disentitled to recover her compensation, whether

3

commissions or salary." *Doe v. Solera Cap. LLC*, No. 18-CV-1769 (ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019) (cleaned up).

"'New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture,' and the New York Court of Appeals has not resolved which one applies in particular circumstances." *CBRE, Inc. v. Pace Gallery of New York, Inc.*, 17-CV-02452 (ALC), 2021 WL 1198644, at *11 (S.D.N.Y. Mar. 30, 2021) (quoting *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 229 (2d Cir. 2020)). The first standard, named the *Turner* standard, focuses on whether the agent's misconduct was substantial. *See Robinson v. De Niro*, No. 19-CV-9156 (LJL), 2023 WL 4862772, at *56 (S.D.N.Y. May 25, 2023) (quoting *Yukos*, 977 F.3d at 237) ("'A disloyal employee forfeits promised compensation only when the 'misconduct and unfaithfulness . . . substantially violates the contract of service.'"). The second standard, named the *Murray* standard, provides that an agent is disloyal "if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment." *CBRE*, 2021 WL 1198644, at *11.

### A. LifeSci Was Not a Faithless Servant Under *Turner*

Revelation asks the Court to infer that LifeSci engaged in substantial misconduct. None of the facts it relies on could support that conclusion. "Under the *Turner* standard, courts have found disloyalty not to be substantial only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." *Robinson*, 2023 WL 4862772, at *56 (quoting *Yukos*, 977 F.3d at 237).

In this case, Revelation relies on a single act – a misstatement – to support its faithless servant claim. That misstatement comes from a July 2021 email (the "July 2021 Email") from David Dobkin ("Dobkin"), one of LifeSci's Managing Directors, to Andreas Typaldos

("Typaldos"), the Chief Executive Officer of Petra Acquisition, Inc. ("Petra") (Revelation's pre-merger company), assuring Typaldos that Revelation had $20 million of backstop financing. R&R at 5–6, 23. Prior to receiving the July 2021 Email, Typaldos asked Petra's attorneys to "pause work on merger documents." *Id.* at 5. According to Revelation, LifeSci's assurance of backstop financing was false, and that assurance "influenced" Typaldos to direct Petra's lawyers to resume work on the merger documents. Def. Br. at 15–16.

Revelation fails to adduce any evidence that Dobkin's misstatement rises to the level of substantial misconduct required by *Turner*. First, because the July 2021 Email is, at most, only a single disloyal act, it clearly fails to demonstrate substantial disloyalty under *Turner*. Second, and more importantly, there is no evidence that the July 2021 Email influenced the decision of the board in charge of approving the merger (the "Board"). R&R at 24. To the contrary, the record demonstrates that at the time the Board approved the merger, it knew that Revelation did not have $20 million in backstop financing, but nonetheless believed the merger "presented a good investment opportunity." R&R at 24. Likewise, the record shows the Typaldos, the one individual who allegedly relied on the promise of the $20 million backstop in pursuing the merger, recommended approving the merger despite knowing that Revelation did not have $20 million in backstop financing. *Id.* Moreover, Petra's pre-merger shareholder proxy statement, which states that it contains "all important facts about the issues on which shareholders are asked to vote," makes no mention of the lack of backstop financing. *Id.* at 11, 24.

Rather than cite evidence demonstrating the substantialness of Dobkin's alleged misconduct, Revelation merely contends that the R&R "disregard[s] the evidence showing the impact of [LifeSci's] misrepresentation on Typaldos's decision to pursue" the merger. Def. Br. at 18. Far from disregarding the evidence of LifeSci's misconduct, Judge Aaron described the email

5

in detail and analyzed it under each of the faithless servant standards. *See* R&R at 5–6, 23–25. Further, while one could reasonably infer that the July 2021 Email changed Typaldos's mind about pausing Petra's lawyers' work on the merger, as discussed immediately above, the evidence does not show that the promise of a $20 million backstop impacted the Board's, Typaldos's, or Petra's shareholders' decision to pursue the merger. The undisputed facts show that at most, Dobkin's email was a single act of disloyalty that Petra knew of and tolerated. *See Robinson*, 2023 WL 4862772, at *56. As such, Judge Aaron correctly determined that the July 2021 Email did not rise to the level of misconduct required under the *Turner* standard.

### B. LifeSci Was Not a Faithless Servant Under *Murray*

Revelation also fails to establish that LifeSci was a faithless servant under the *Murray* standard. Relying again on the July 2021 Email, Revelation argues that Dobkin's alleged misrepresentation was adverse to Revelation because it "put Petra squarely on the path to committing to a merger" that Petra would not have committed to otherwise. Def. Br. at 15–16. However, as discussed above in Section I.A, Revelation cites no evidence that Petra would not have committed to the merger but for the misrepresentation. Instead, the undisputed evidence points to the contrary—that all of those involved learned that there was no backstop funding and still knowingly agreed to the merger.

Additionally, the July 2021 Email is not the type of conduct covered by the faithless service doctrine. Courts in the Circuit have limited the faithless servant doctrine "to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-2093 (LTS), 2022 WL 3928370, at *7 (S.D.N.Y. Aug. 31, 2022) (collecting cases) (quoting *Grewal v. Cuneo*, No. 13-

6

CV-6836 (RA), 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016)); *see also Primiani v. Vintage 185 Inc.*, No. 18-CV-2237 (ADS), 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019). Revelation fails to explain how the July 2021 Email falls into any of these categories.

Though Revelation cites to cases in which the faithless servant doctrine was extended to situations beyond those listed by the court in *Stefanovic*, each of those cases is distinguishable. *See* Def. Br. at 14–15. For instance, *Doe 1 v. JPMorgan Chase Bank, N.A.*, 687 F. Supp. 3d 405 (S.D.N.Y. 2023), involved a JPMorgan executive who was alleged to have "directly facilitate[ed] and participat[ed]," and "concealed" "the sex trafficking operation of Jeffrey Epstein." This Court found that the executive's alleged actions were "sufficient to support a claim under the faithless servant doctrine" because the "high-level executive is alleged to have engaged in highly inappropriate conduct that spanned almost a decade and exposed JPMorgan to substantial potential civil and criminal liability." *Id.* at 422. Likewise, in *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 77 (2d Cir. 2010), the Second Circuit affirmed that an employee who kept "a family member on the payroll against his superior's direct orders" so that he could continue to receive compensation from the company was a faithless servant because he engaged in self-dealing at the company's expense. Finally, in *Stanley v. Skowron*, 989 F. Supp. 2d 356, 362 (S.D.N.Y. 2013), the court found that a portfolio manager who engaged in insider trading and then "lied and covered up his involvement for years afterwards," was a faithless servant because he exposed the company to "to government investigations and direct financial losses," and his "behavior damaged the firm's reputation, a valuable corporate asset."

Unlike Revelation's allegations against LifeSci, each of these cases involves egregious acts of misconduct by an employee that caused or had the prospect of causing significant harm to their employer. There is no evidence that the alleged misstatement in the July 2021 Email

7

impacted the relevant stakeholders' decision to pursue the merger, or that the misstatement caused or had the prospect of causing significant harm to Revelation.

Revelation also argues that the R&R made an improper inference that "Dobkin's swaying of Typaldos to proceed had no impact on the" Board's approval of the merger when the "reasonable inference in Revelation's favor is rather that Dobkin's tricking of Petra's board chairmen caused its board to be favorably inclined to approve the Merger." Def. Br. at 18. This argument is unavailing. As discussed immediately above, Judge Aaron squarely addressed the lack of impact that the assurance of backstop financing had on Typaldos's and the Board's decision to pursue the merger. R&R at 24. As Typaldos's deposition shows, Typaldos and the Board approved the merger knowing that Revelation did not have $20 million of backstop financing. Revelation adduces no evidence to the contrary and no evidence to suggest that Dobkin's alleged "tricking" of Typaldos caused him or the Board "to be favorably inclined to approve the merger."

## II.    The Court Reject's Revelation's Remaining Objections

Revelation dedicates one sentence of its brief to object to the R&R's rejection of its defense of the breach of the implied covenant of good faith and fair dealing and one sentence to object to the R&R's rejection of its calculation of stock fee damages. Def. Br. at 21. In support of these objections, Defendant relies entirely on, what the Court presumes is, its memorandum in opposition to Plaintiff's motion for summary judgment.[1] *Id.* The Court reviews these objections for clear error. *See Giallanzo* at 450 ("To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will

---

[1] Defendant cites to ECF No. 81 for both objections. However, ECF No. 81 is Defendant's memorandum of law in opposition to Plaintiff's motion for an attachment.

review the report and recommendation strictly for clear error."). Finally, the Court reviews Defendant's objection to Judge Aaron's denial of leave to file a Second Amended Answer for clear error. *See Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, No. 15-CV-2144 (LGS), 2020 WL 91390, at *2 (S.D.N.Y. Jan. 8, 2020).

Having reviewed the R&R for clear error and, finding none, the Court adopts Judge Aaron's (1) dismissal of Revelation's defense of the breach of the implied covenant of good faith and fair dealing; (2) calculation of damages; and (3) denial of leave to file a Second Amended Answer.

## CONCLUSION

For the reasons stated above, Judge Aaron's Report and Recommendation is ADOPTED in its entirety. Plaintiff's motion for summary judgment is GRANTED and Defendant's motion to amend is DENIED. The Clerk of Court is directed to enter judgment in favor of Plaintiff in the following amounts:

(1) On Plaintiff's First Cause of Action, for breach of the BCMA, Plaintiff shall be awarded the sum of $1,528,411.71 for the Deferred Underwriting Fee, plus pre-judgment interest at a rate of 1.5% per month from January 25, 2022, and

(2) On Plaintiff's Second Cause of Action, for breach of the Amendment to Agreement, Plaintiff shall be awarded:

    a. the sum of $1,050,000.00 for the M&A Cash Fee, plus pre-judgment interest at a rate of 1.5% per month from January 25, 2022, and

    b. the sum of $2,625,000.00 for the value of the equity not delivered to Plaintiff (i.e, the M&A Equity Fee), plus pre-judgment interest at the New York statutory rate of 9% per annum (see CPLR 5001, 5004) from January 18, 2022.

Plaintiff also is entitled to recover reasonable attorneys' fees and expenses pursuant to the October 7, 2020 Business Combination Agreement and may seek to recover such fees and expenses pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. Plaintiff may submit any motion for attorneys' fees and costs within 30 days of this decision, and Defendant shall have two weeks thereafter to respond to any such motion.

The Clerk of Court is directed to terminate ECF Nos. 53 and 65.

Dated: August 1, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge